(113 So. 10)
HINKLE et al. v. TOWN OF CITRONELLE.
(1 Div. 453.)

Supreme Court of Alabama. May 12, 1927.

1. **Municipal corporations** ☞18—Order of probate judge, in proceedings for incorporation, held not to preclude inquiry into validity thereof (Code 1886, § 1486).

Order of probate judge, in proceedings for incorporation, under Code 1886, § 1486, constitutes nothing more than a ministerial notation of what was done and does not preclude inquiry into validity of proceeding, since it is not evidence of judicial ascertainment of result thereof.

2. **Municipal corporations** ☞23—Owners of land treated as part of town for nearly 30 years held estopped from questioning boundaries by acquiescence therein (Code 1886, § 1486).

Where area included in petition for incorporation under Code 1886, § 1486, had for nearly 30 years been treated as part and parcel of town, owners of territory in disputed area are estopped from questioning such boundaries by reason of acquiescence therein.

3. **Municipal corporations** ☞18—Existence of municipal corporations cannot be destroyed, or organization annulled, in collateral proceeding attacking boundaries.

Existence of a municipal corporation cannot be destroyed, or its governmental organization annulled, in a collateral proceeding to enforce a tax lien wherein boundaries were disputed.

Appeal from Circuit Court, Mobile County; Saffold Berney, Judge.

Proceeding in equity by the Town of Citronelle against W. S. Hinkle and H. A. Hin-

---

kle, to enforce a tax lien. From a decree for complainant, defendants appeal. Affirmed.

Webb & Shepard, of Mobile, for appellants.

The boundaries of the municipality were fixed in accordance with the plat attached to the petition for incorporation. The property involved, not being described therein, was not embraced in the corporate limits. Code 1886, §§ 1486–1490. There being no subsequent proceedings to enlarge the boundaries of the town, the mere payment of taxes by those residing out of the corporate limits, voting, being candidates, or holding office in the municipality, would not be sufficient to extend the corporate limits. Armstrong v. Topeka, 36 Kan. 432, 13 P. 843; Langworthy v. Dubuque, 13 Iowa, 86.

Stevens, McCorvey, McLeod, Goode & Turner, and C. M. A. Rogers, of Mobile, for appellee.

Mere irregularities in its organization will not be considered on collateral attack of the organization of the municipality. State ex rel. Roberson v. Pell City, 157 Ala. 380, 47 So. 246. Long acquiescence in the location of municipal boundaries by the corporation and inhabitants thereof, where all municipal action has been done under the assumption that such are the boundaries, will support the conclusion that such are the true boundaries, notwithstanding they were not originally so located. State ex rel. Martin v. Gadsden, post, p. 243, 113 So. 6; Wells v. Iron Co., 48 N. H. 491; Belknap v. Louisville, 93 Ky. 444, 20 S. W. 309; State ex rel. Brown v. Westport, 116 Mo. 582, 22 S. W. 888; 1 McQuillin, Mun. Corp. 587; 28 Cyc. 182.

SAYRE, J. In the proceeding to incorporate the town of Citronelle the effort was to follow the prescriptions of section 1486 of the Code of 1886, which read as follows:

"The inhabitants of a town not incorporated, the population of which is not less than one hundred, nor more than three thousand, may become a body corporate, upon a petition in writing, addressed to the judge of probate of the county in which they reside, signed by twenty or more of the adult male inhabitants, stating the name and boundaries by which it is proposed to incorporate such town; but the boundaries of such town must not be fixed until a majority of the owners of the real estate situate within such boundaries have, in writing signed by them and filed with the judge of probate, expressed their assent to such boundaries."

It will be observed that the section requires that the petition for incorporation must state the boundaries of the territory which it is proposed to incorporate, but that the boundaries must not be fixed until "a majority of the owners of the real estate situate within such boundaries have, in writing signed by them and filed with the judge of probate, expressed their assent to such boundaries." Out of these prescriptions has arisen the question now submitted for adjudication.

Petition was filed on April 2, 1892, describing the proposed boundaries of the town by reference to a map filed therewith. This petition was signed by 26 persons describing themselves as citizens and residents of Citronelle in Mobile county. On that day the judge of probate made an order for the election, the concluding clause of which read as follows:

"The boundaries of such town will not be fixed until a majority of real estate owners situate within the boundary applied for is signed by them in writing, filed with the probate judge, expressing their assent to such boundary."

The transcript shows a copy of a paper purporting to be the petition of 49 persons, describing themselves as citizens of Citronelle, that the boundaries of the town be fixed as shown by a plat attached indicating a territory somewhat larger than that shown by the map first filed. This petition was dated April 18, 1892. On the same day an election was held, 56 votes being cast for incorporation, 9 against.

An undated paper, taken from the minute book under date of March 25, 1893, purports to evidence the assent of the signers, 21 in number, owners of real estate in the town of Citronelle, to the corporate limits "as described in a map on file in the probate court of Mobile county."

April 20, 1892, the probate court entered an order declaring the town of Citronelle incorporated "with the boundary designated in the petition."

Appellants own real property in that territory shown by the plat, or second map, in excess of that shown by the first map. Their property was assessed for taxation for the tax year 1922–1923 and in due course a decree was entered ordering its sale for the payment of such taxes. It is agreed between the parties that "the question involved in this appeal is as to the right of the town of Citronelle to levy and collect taxes on the property of W. S. Hinkle and H. A. Hinkle, and the right of the town to tax the owners of the said property is dependent on the determination of the boundaries or corporate limits of the town of Citronelle."

The evidence disclosed the fact that since 1892 the municipal authorities had exercised jurisdiction in the disputed territory—so to speak of the territory in which appellants' property is located—levying and collecting taxes and otherwise, and that the residents of that territory had exercised political privileges and prerogatives as residents of the town of Citronelle, some of them holding office in the municipal government. In the proceeding to collect taxes appellants inter-

posed their contention that the municipal government had no jurisdiction in the premises.

The proceeding for the incorporation of the town were defective, or, rather, the record thereof fails to show just what relation the second petition and map bore to the first. Appellants contend that the record—so to speak of the maps and documents shown in the transcript—shows an incorporation according to the first petition and map, and fails to show an amendment or extension according to law of the municipal boundaries to include their property.

[1] The proceeding to incorporate, or, rather, the evidence of that proceeding, was left in a state of much confusion. The order of the probate judge does not improve the situation. It is of doubtful meaning in itself, nor can it be regarded as anything more than a ministerial notation of what was done, nor would it, though of certain meaning, preclude inquiry into the validity of the proceeding. It does not evidence a judicial ascertainment of the result of the proceeding. West End v. State, 138 Ala. 302, 36 So. 423.

There are two sufficient reasons why it must now be determined that the map or plat showing the larger area, thereby including the property of appellants, furnishes for the purpose of this proceeding a correct description of the corporate limits of the town of Citronelle.

[2] 1. For nearly 30 years before appellants set up their contention the disputed area had been on all hands treated as part and parcel of the town. Appellants, in common with all other inhabitants of the area, are now estopped by acquiescence in the boundaries so recognized and treated as lawful. "Long acquiescence in the location of municipal boundaries, although indefinite and uncertain, by the local corporation and the inhabitants thereof, and where all municipal action and improvements have been done under the assumption that such are the boundaries, will support the conclusion that such are the true boundaries, notwithstanding they were not originally so located." 1 McQuillin, Mun. Corp., § 260 et seq., where this doctrine is discussed at length and the authorities are cited; 28 Cyc. 182; State ex rel. Martin v. Gadsden (Ala. Sup.) 113 So. 6,[1] taking the same view; Marengo County v. Wilcox County, 215 Ala. 640, 112 So. 243.

[3] 2. The municipal corporation as now organized and functioning is at least a de facto· corporation territorially coextensive with the limits in which it has exercised its governmental activities. The present attack is collateral. The existence (pro tanto in this case) of a municipal corporation cannot be destroyed or its governmental organization annulled in a collateral proceeding. Ex parte Moore, 62 Ala. 476.

The judgment of the circuit court, affirming the right of the town to levy and collect taxes in the disputed area, must be affirmed.

GARDNER, BOULDIN, and BROWN, JJ., concur.

